UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

CITY OF COWAN, TENNESSEE,   )
  )
      Plaintiff,   )
  )
v.   )    No. 4:14-CV-055
  )    Phillips
CITY OF WINCHESTER,   )
TENNESSEE, and BOARD OF   )
PUBLIC UTILITIES OF THE CITY   )
OF WINCHESTER d/b/a WINCHESTER)
UTILITY SYSTEM,   )

## MEMORANDUM OPINION

The pending cross motions for summary judgment present the question of whether the City of Cowan, Tennessee, or the Winchester Utility System may provide certain utility services to two industrial plants within the city limits of Winchester, Tennessee. Currently pending are the City of Winchester's motion for summary judgment [Doc. 27], the Winchester Utility System's motion for summary judgment [Doc. 30], and the City of Cowan's motion for summary judgment [Doc. 33]. The parties have filed a joint stipulation of facts [Doc. 26], as well as supporting memoranda of law, statements of additional facts, responses, and replies [Docs. 28, 29, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42]. Accordingly, the motions have been thoroughly briefed and are ripe for determination.

After carefully considering the pending motions and the arguments of counsel on July 27, 2015, the Court finds that the City of Cowan's motion for summary judgment

should be **GRANTED**, the City of Winchester's motion for summary judgment should be **GRANTED**, and the Winchester Utility System's motion for summary judgment should be **DENIED**.

## I. Relevant Facts

The City of Cowan, Tennessee ("Cowan") is a Tennessee municipality in Franklin County, Tennessee which owns and operates a municipal water and sewer system [Doc. 26 at ¶ 1]. The City of Winchester, Tennessee ("Winchester") is also a Tennessee municipality located in Franklin County, Tennessee [Doc. 26 at ¶ 2]. The Board of Public Utilities of the City of Winchester d/b/a Winchester Utility System ("Winchester Utilities" or "WUS") is the Board which operates a municipal utility system that provides water, sewer, and electrical service on behalf of the City of Winchester [Doc. 26 at ¶ 3]. Winchester Utilities was created by Chapter 404 of the 1953 Tennessee Private Acts [*Id.*].

Cowan has issued two municipal bonds to the United States Department of Agriculture ("USDA"): a $120,000 Water and Sewer Revenue and Tax Bond, Series 2009; and a $500,000 Water and Sewer Revenue and Tax Bond, Series 2008 [Doc. 26 at ¶ 4]. The maturity date of the Series 2009 bond issue is March 24, 2048, and the maturity date of the Series 2008 bond issue is January 7, 2048 [*Id.*]. Both of these bonds remain outstanding [*Id.*]. Both municipal bonds are secured by the water and sewer revenues of the Cowan water system and sewer system and by the full faith, credit and resources of

Cowan [Doc. 26 at ¶ 5].  Cowan operates its water and sewer systems as a single system [*Id.*].

Cowan adopted two bond resolutions authorizing it to issue these bonds to the USDA to obtain loans from the USDA to construct water line extensions and improvements to its water system [Doc. 26 at ¶ 6].  As required by the USDA and its predecessors, each bond resolution contains the following covenant:

> [Cowan] will not construct, finance or grant a franchise for the development or operation of facilities that compete for service with the services to be provided by the System or consent to the provision of any such services in the area currently served by [Cowan] by any other public or private entity and will take all steps necessary and proper, including appropriate legal action to prevent any such entity from providing such service.

[Doc. 26 at ¶ 7].  Each bond resolution defines "System" to mean:

> [T]he complete water and sewer system of [Cowan] together with, and including, the Project, and all water and sewer properties of every nature hereafter owned by [Cowan], including all improvements and extensions made by [Cowan] while the Bond or Parity Bonds remain outstanding, and including all real and personal property of every nature comprising part of or used or useful in connection with the water and sewer system, and including all appurtenances, contracts, leases, franchises and other intangibles.

[Doc. 26 at ¶ 8].

Cowan provides domestic sewer service to the following two customers: (1) Diversatech Plastics Group, LLC, with a manufacturing facility located at 3830 Cowan Highway, Winchester, TN 37398; and (2) Shaw Industries, Inc., 4130 Cowan Highway, Winchester, TN (collectively the "Disputed Customers") [Doc. 26 at ¶ 9].  Cowan began providing domestic sewer service to Shaw Industries, Inc., or its relevant predecessors, in

or around 1964 and has continuously provided domestic sewer service to Shaw Industries and its predecessors at this site since 1964 [Doc. 26 at ¶ 10]. Cowan began providing domestic sewer service to Diversatech Plastics Group, LLC, or its relevant predecessors, in or around 1972 and has continuously provided domestic sewer service to Diverstech and its predecessors at this site since 1972 [Doc. 26 at ¶ 11].

Winchester Utilities provides water and electric services to both Disputed Customers [Doc. 26 at ¶ 12; Doc. 36-5 at p. 51]. Winchester Utilities began providing water service to the Shaw plant in 1962, and began providing water service to the Diversatech plant in 1974, and [*Id.* at p. 53]. WUS owns the water meters for both plants and they must be read by physically inspecting the meters [Doc. 36-5 at p. 40]. Cowan uses the WUS water meters to determine its billing for the Disputed Customers [Doc. 38 at ¶ 82]. Winchester Utilities provides industrial sewer service to Shaw Industries [Doc. 26 at ¶ 12]. Both Disputed Customers are within Winchester's City limits [*Id.*]. Winchester annexed the Shaw Industries property pursuant to Ordinance No. 308 on September 26, 1962 [*Id.*]. Winchester annexed the Diversatech property pursuant to Ordinance No. 407 on January 22, 1974 [*Id.*].

Cowan has a pump station[1] used in its provision of sewer service to the Disputed Customers that is located on Shaw Industries' property [Doc. 26 at ¶ 13]. This pump station is within the Winchester city limits [*Id.*]. Cowan has sewer lines used in its

---

[1]A pump station is also referred to as a "lift station" and is described by Roger Caldwell, manager of WUS, as forcing sewage along the main to the next level or the next lift station to keep it pumping until it reaches the wastewater plant [Doc. 36-5 at p. 32].

4

provision of sewer service to the Disputed Customers that are located within the Winchester City limits [*Id*.].

Winchester Utilities was the focus of a Tennessee Department of Environment and Conservation ("TDEC") enforcement action regarding some overflows and discharge of effluent which was resolved via a consent order dated May 15, 2012 [Doc. 26 at ¶ 15; Dock 36-5 at p. 42]. One of the stipulations of that order was that Winchester Utilities enforce its sewer use policy [*Id*. at p. 43]. WUS's policy is that a customer within the city limits cannot have electric service without also having water and sewer services [Doc. 36-5 at p. 51]. Winchester Utilities reviewed who was receiving sewer services within the city limits of Winchester and discovered that Shaw was receiving only industrial sewer services from WUS and that Diversatech received no sewer services from WUS [*Id*.]. Following this review of their services, Tim Solomon, the Water/Wastewater Superintendent of WUS, communicated with the Disputed Customers and with Cowan that, per the TDEC administrative order, Winchester Utilities was supposed to provide their domestic sewer services [*Id*. at pp. 47—48].

In February 2014, Winchester Utilities demanded that the Disputed Customers connect to Winchester Utilities' sewer system for their domestic sewer needs. At that time, Cowan was still the domestic sewer service provider to the Disputed Customers and Cowan has continued to provide domestic sewer service to the Disputed Customers to the present [Doc. 26 at ¶ 16]. Following Board approval in March 2014, Winchester Utilities began charging both Diversatech and Shaw for domestic sewer services [Doc. 36-5 at p. 67].

No one from Winchester Utilities can explain why they did not provide domestic sewer service to Diversatech and Shaw or their predecessors when the plants first went into operation [*Id*. at p. 54]. Indeed, there is no evidence of an agreement, oral or written, between the parties and/or the Disputed Customers to explain how or why the provision of utility services to the Disputed Customers has occurred as it is presently configured.

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479—80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Winchester's Motion for Summary Judgment

Winchester moves for judgment as a matter of law on the grounds that the City of Winchester should not be a party to this case [Doc. 27]. Winchester argues that it is a separate and distinct governmental entity with a separate legal existence than Winchester Utilities [Doc. 28 at pp. 3—4]. Cowan argues that Winchester Utilities is an administrative body controlled by the City of Winchester and, therefore, the City of Winchester is vicariously liable for the actions of Winchester Utilities [Doc. 36 at pp. 4—6]. In response, defendants argue that Winchester Utilities has complete charge and

7

control over its operations and essential functions [Doc. 41 at pp. 1—6]. The evidence on this issue is as follows.

The Winchester Board of Public Utilities was created as an "administrative body" by Chapter 404 of the 1953 Tennessee Private Acts [Doc. 36-2]. The members of the Board are appointed by the Mayor and Aldermen of the City of Winchester. Further, Chapter 404 provides that:

> The Board of Public Utilities shall have complete charge and control of the operation of the electric power distribution system, the water system, and any other utility now owned or hereafter acquired, and to that end may employ a superintendent and other employees and fix rates and enter into contracts and generally operate and administer such systems completely, free from the control or supervision of the Board of Mayor and Alderman, provided only that in the operation of such systems and the fixing of rates, the Board of Public Utilities shall observe all covenants and agreements heretofore entered into or made by the Board of Mayor and Aldermen.

[*Id*. at p. 2]. Chapter 404 further provides that:

> The right to acquire, improve, operate and maintain the electric distribution system, the water system, and any other utility now owned or hereafter acquired … shall be exercised in behalf of the Town of Winchester by the Board of Public Utilities … . Subject to the provisions of all contracts and to the provisions of resolutions of the Board of Mayor and Aldermen heretofore entered into and passed, the Board of Public Utilities shall determine programs and make all plans for the acquisition, improvement, and operation of said systems; shall make all determinations as to rates and financial practices, and may establish such rules and regulations as it may deem necessary or appropriate to govern the service of said systems, and may disburse the revenues of said systems.

[*Id*. at pp. 2—3]. Mr. Caldwell states that Winchester Utilities is a municipal utility corporation organized under the laws of the State of Tennessee and is considered a governmental entity [Doc. 36-5 at pp. 16—17].

Winchester Utilities owns the sewer system within the City of Winchester and is responsible for the construction, supervision, control, and maintenance of the sewer system within the City [Doc. 6-1 at ¶ 3]. The City of Winchester owns some of the property used to operate the WUS and some of the property is owned by WUS [Doc. 36-4 at p. 2]. The City's and Winchester Utilities' funding and finances are separate; they each have their own employees, office space, equipment, vehicles, and buildings separate and apart from each other [Doc. 6-1 at ¶ 4]. Winchester Utilities has a separate management from the City, a separate accounting system, and is audited separately from the City [Doc. 36-5 at pp. 26—27]. The WUS audit results are merged into the City of Winchester's audit that is sent to the state comptroller's office [*Id*. at pp. 27—28].

Cowan has framed the issue as one of agency, that is, that WUS is an agent of the City of Winchester [Doc. 36 at p. 6]. The doctrine of respondeat superior permits a principal to be held liable for the negligent act of its agents. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005). In order to hold a principal liable for the acts of another, a plaintiff must prove (1) that the person causing the injury was the principal's agent and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred. *Id*. Whether an agency relationship exists is a question of fact. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343—44 (Tenn. 2002) (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 724 (Tenn. 2000)). The principal's right to control the acts of the agent is a relevant factor when determining the existence of an agency relationship, with the amount of control exercised over the conduct of the work a

9

key factor. *Id.*; *see Tucker*, 180 S.W.3d at 120 ("Control is a key element in the creation of a principal-agent relationship").

Although Cowan argues that there are genuine issues of material fact in dispute, the only dispute is the evaluation of the evidence cited herein. A review of the evidence outlined above indicates that Winchester does not control the operations of WUS. Indeed, Chapter 404 specifically provides that the WUS Board has "complete charge and control" of the utility systems, including the right to fix rates, and to "improve, operate and maintain" the utility systems. The only evidence of control by the City of Winchester is the fact that the WUS Board members are appointed by the Mayor and City Council; all other facts indicate that WUS is a separate entity with separate employees, offices, and finances, and that it is WUS, not the City, in control of the operation of the utility systems. Accordingly, the Court finds that WUS is not an agent of Winchester for purposes of the claims asserted in this case and the City of Winchester's motion for summary judgment [Doc. 27] will be granted.

B.     Cowan's Motion for Summary Judgment & Winchester Utilities' Motion for Summary Judgment

1.     Whether Cowan is Entitled to 7 U.S.C. § 1926(b) Protection

Winchester Utilities argues that it is entitled to summary judgment because it has the legal right to provide utility services to the Disputed Customers pursuant to Tenn. Code Ann. § 6-51-111 [Doc. 31 at pp. 3—4]. Winchester Utilities also argues that Cowan is not protected by 7 U.S.C. § 1926(b) because Cowan was not indebted to the USDA when WUS began providing other utility services to the Disputed Customers and

10

Cowan did not have the "legal right" to provide services to the Disputed Customers [*Id.* at pp. 5—7]. Finally, Winchester Utilities argues that it is entitled to summary judgment as a matter of public policy due to Cowan's ongoing trespass by providing service to the Disputed Customers within the City of Winchester [*Id.* at pp. 7—8].

In contrast, Cowan argues that it is entitled to the protections of § 1926(b) in its provision of domestic sewer service to the Disputed Customers [Doc. 35 at pp. 4—8]. Cowan contends that WUS's demand that the Disputed Customers connect to its domestic sewer service constitutes an attempt to curtail Cowan's right to serve these customers in violation of § 1926(b) and that this action is cognizable under 42 U.S.C. § 1983 [*Id.* at pp. 8—12].

The Court begins with an examination of 7 U.S.C. § 1926(b), the pertinent section of the Consolidated Farm and Rural Development Act of 1961, which provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). Section 1926(b) was enacted to protect rural water associations indebted to the USDA from competition. *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 704 (6th Cir. 2003); *see Village of Grafton v. Rural Lorain Cnty. Water Auth.*, 419 F.3d 562, 565 (6th Cir. 2005) ("In order to encourage rural water development by expanding the number of potential users and to safeguard the financial viability of rural

associations and loans, 7 U.S.C. § 1926(b) was enacted" ) (quoting *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996)). This provision is intended to prevent local governments from expanding into a rural water association's area and stealing its customers, thereby ensuring the repayment of federal loans. Section 1926(b) should be given a "liberal interpretation." *Le-Ax Water Dist.*, 346 F.3d at 705.

In order to state a claim under § 1926(b), a plaintiff must establish (1) that it is an "association" within the meaning of the statute[2]; (2) it has a qualifying outstanding USDA loan obligation[3]; and (3) it has provided or made service available in the disputed area. *Id.* (quoting *Adams County Reg'l Water Dist. v. Village of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000). Winchester Utilities does not dispute that Cowan qualifies as a rural water association [Doc. 31 at p. 5], but argues that it does not meet the other two criteria for § 1926(b) protection.

It is undisputed that Cowan has two outstanding loans to the USDA for the purpose of constructing water and sewer system improvements and has issued two municipal bonds securing those loans, with the bonds to be paid from the revenues of the

---

[2]The statute defines a covered "association" as: "associations, including corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized Indian tribes, and public and quasi-public agencies to provide for … the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities … primarily serving farmers, ranchers, farm tenants, farm laborers, rural businesses, and other rural residents." 7 U.S.C. § 1926(a)(1).

[3]The qualifying loan program was previously administered by the United States Farmer's Home Administration, thus there are references in the case law to a qualifying "FmHA" loan. *See, e.g., Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 705 (6th Cir. 2003). This program is now administered by the United States Department of Agriculture. For the purpose of simplicity, the Court will refer to the qualifying loans as "USDA loans."

water and sewer system [Doc. 26 at ¶¶ 4—6]. Winchester Utilities argues that Cowan was not indebted to the USDA at the time WUS began providing water service to the Disputed Customers [Doc. 31 at pp. 5—6]. However, this argument seems to conflate the second and third elements of a § 1926(b) claim. It is undisputed that *both* parties were providing services to the Disputed Customers at the time Cowan became indebted to the USDA and *prior* to the time WUS attempted to persuade the customers to switch their domestic sewer service to WUS. The timing of the loans and the provision of services relates to whether Cowan can establish that it has provided or made service available to the disputed area (the third § 1926(b) element) and, if so, when the protection of § 1926(b) attaches. Defendants have supplied no facts to dispute that Cowan has two outstanding USDA loans and the Court therefore concludes that the second criteria for § 1926(b) protection is established.

With respect to the third element of a § 1926(b) claim, Cowan argues that it has been continuously providing domestic sewer service to the Disputed Customers since 1964 and 1972 respectively to the present day [Doc. 35 at pp. 7—8], which is undisputed by Winchester Utilities. Relying on the two-part test used by the Sixth Circuit to determine if a party "provides or makes service available to the geographical area in question" element [Doc. 31 at pp. 6—7 (citing *Le-Ax Water Dist.*, 346 F.3d at 706], Winchester Utilities argues that Cowan did not and does not have the legal right under state law to provide service to the Disputed Customers. The first requirement is referred to as the "pipes in the ground" test, that is, "whether an association has made service available is determined based on the existence of facilities on, or in the proximity of, the

13

location to be served." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 237 (6th Cir. 1996). Winchester does not dispute that Cowan has made service available to the Disputed Customers.

The second requirement, which Winchester Utilities disputes, is "that the water district must have the legal right under state law to serve the area in question." *Le-Ax Water Dist.*, 346 F.3d at 706. WUS notes that the property where the Disputed Customers are located was annexed by the City of Winchester decades before Cowan obtained USDA loans. Thus, WUS contends that, following annexation, it had the exclusive right pursuant to Tenn. Code Ann. § 6-51-111 to "provide municipal and utility function and services" to the Disputed Customers [Doc. 31 at pp. 6—7]. Cowan responds that Tenn. Code Ann. § 6-51-111 does not give Winchester Utilities the exclusive right to serve the Disputed Customers and further that Tenn. Code Ann. § 6-51-111 cannot usurp Cowan's protections under § 1926(b) [Doc. 36 at pp. 8—13].

Tenn. Code Ann. § 6-51-111(a) states as follows:

> Upon adoption of an annexation ordinance or upon referendum approval of an annexation resolution as provided in this part, an annexing municipality and any affected instrumentality of the state, including, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances. Any and all agreements entered into before March 8, 1955, relating to annexation shall be preserved. *The annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory that it annexes*, notwithstanding § 7-82-301 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives.

Tenn. Code Ann. § 6-51-111(a) (emphasis added). Thus, Winchester Utilities relies on this provision of Tennessee law for its position that, pursuant to its annexation of the Disputed Customers' property, it has the exclusive right to provide utility services to the Disputed Customers. WUS also relies on *Franklin Power & Light Co. v. Middle Tenn. Elec. Membership Corp.*, 434 S.W.2d 829, 831 (Tenn. 1968), for the proposition that, following annexation, Cowan would have to obtain permission from the City of Winchester to continue to provide utility services to the Disputed Customers [Doc. 31 at pp. 3—4].

In response, Cowan contends that this right is not automatic, but a choice that must be exercised in accordance with the statute. Specifically, Cowan argues that the annexing municipality must assert the right to serve the annexed territories within 60 days of the annexation by obtaining a written agreement with the current utility provider. Further, Cowan notes that the statute requires the annexing authority to submit any disagreement with the existing utility provider to arbitration. Cowan argues that Winchester Utilities' failure to comply with any of these requirements waives any statutory protection [Doc. 36 at pp. 10—12]. Finally, and perhaps most importantly, Cowan argues that Tenn. Code Ann. § 6-51-111 does not usurp Cowan's protections under § 1926(b), relying on *Dyersburg Suburban Consol. Utility Dist. v. City of Dyersburg*, No. W2006-01704-COA-R3-CV, 2007 WL 1859460 (Tenn. Ct. App. June 29, 2007) [Doc. 36 at pp. 12—13].

Because the *City of Dyersburg* case is the only authority cited by the parties to consider the intersection of § 1926(b) and Tenn. Code Ann. § 6-51-111, a close examination of the case is warranted. The case involved a dispute between a rural water

15

association with outstanding USDA loans, the Dyersburg Suburban Consolidated Utility District, or "DSCUD", and the City of Dyersburg as to which entity was entitled to provide water service to a proposed subdivision. Most of the disputed property lay within DSCUD's defined service area and was annexed by the City of Dyersburg. *Id*. at *1. The Tennessee Court of Appeals agreed with the City that, after annexation, it acquired the "exclusive right" to choose to provide utility services to the annexed area pursuant to Tenn. Code Ann. § 6-51-111. *Id*. at *4. Next, in analyzing the three elements of a § 1926(b) claim, the court considered whether DSCUD had the legal right to provide service to the annexed property or whether Tenn. Code Ann. § 6-51-111 took that right away when the City annexed the property. The court held:

> Where federal § 1926(b) protections have attached, § 1926(b) preempts local or state law that can be used to justify a municipality's encroachment upon a disputed area in which the indebted association is legally providing service under state law. Section 1926 takes precedence over inconsistent state law pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, which states that laws of the United States made in pursuance of the Constitution shall be the supreme law of the land, and judges of every state are bound thereby. … The state statute at issue here, Tenn. Code Ann. § 6-51-111, is clearly inconsistent with Congress's purposes and objectives as set forth in § 1926(b). Therefore, if § 1926(b) applies to protect DSCUD from municipal encroachment, the federal statute preempts Tenn. Code Ann. § 6-51-111 so that the City could not simply take over the provision of water service when it annexed the area.

*Id*. at *9 (internal citations omitted).

Winchester Utilities has not provided any authority to counter the holding in *City of Dyersburg*, nor has the Court found any. A review of *Village of Grafton*, 419 F.3d 562 (6th Cir. 2005), leads the Court to a similar conclusion. In *Grafton*, a regional water district association began providing water service to a disputed area in 1974, which was

16

later annexed by the Village of Grafton in 1990. The regional water district obtained an USDA loan in 2002. The Sixth Circuit concluded that any "exclusive right" the Village had to provide utility services within the annexed territory was limited by the liberal interpretation given to § 1926(b) protection against municipal encroachment. *Id*. at 567. "Because the Village started to provide water service … only after RLCWA became indebted…, § 1926(b) prevents the Village from denying RLCWA the right to provide service." *Id*.

Upon careful consideration of these authorities and the facts of the instant case, the Court finds their reasoning persuasive. Although Tenn. Code Ann. § 6-51-111 may have given the City of Winchester the "exclusive right" to provide utility services to the Disputed Customers upon annexation, the Supremacy Clause demands that this right must yield to the protections afforded by § 1926(b) once Cowan became indebted to the USDA. *See Pittsburgh County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 715 (10th Cir. 2004) ("[t]here is thus preemption of any local or state law that purports to take away from an indebted rural water association any territory for which the association is entitled to invoke the protection of § 1926(b)"). Further, any doubts as to whether Cowan is entitled to protection from competition under this statute should be resolved in favor of the party receiving federal monies, *i.e.*, Cowan. *Wayne v. Village of Sebring*, 36 F.3d 517, 528 (6th Cir. 1994); *Town of Rogersville ex rel. Rogersville Water Comm'n v. Mid Hawkins Cnty. Util. Dist.*, 122 S.W.3d 137, 141 (Tenn. Ct. App. 2003).

Winchester Utilities argues that it is not encroaching on the services provided by Cowan; rather, "Cowan is encroaching and trespassing into the city limits of Winchester

by providing service to Diversatech and Shaw" [Doc. 40 at p. 4]. In other words, Winchester Utilities is not seeking to expand its territory, but only to provide additional service to existing customers within the Winchester city limits [*Id.* at pp. 6—7]. This argument, however, is contrary to the undisputed evidence that WUS demanded that the Disputed Customers connect to the WUS sewer system for their domestic sewer needs [Doc. 26 at ¶ 16]. In other words, Winchester Utilities is trying to force the Disputed Customers to cease their service with Cowan and become exclusive customers of WUS.

Although § 1926(b) does not define what it means for a service to be "curtailed or limited," it is well settled that this protection should be given a liberal interpretation. *Wayne*, 36 F.3d at 527. The statute has been construed as explicitly prohibiting municipal encroachment by means of annexation or a grant of private franchise, *id.* at 528, as well as by "new or additional permit requirements, or similar means." *Lexington-South Elkhorn Water Dist.*, 93 F.3d at 235. Indeed, the Sixth Circuit has held that it is not necessary that the municipality actually annex or attempt to physically include the disputed territory in order for curtailment to be found. *See Adams Cnty. Reg. Water Dist.*, 226 F.3d at 518. In liberally construing the statutory terms to the present facts, the Court also observes that the statute prohibits a municipality from "limiting" the service of a qualified association. The unusual facts of this case show that the Disputed Customers were annexed into the city limits of Winchester long ago, but they received domestic sewer services from Cowan, without dispute or controversy, until February 2014. Winchester Utilities' demand that the Disputed Customers switch their domestic sewer

service to WUS can easily be described as curtailing or limiting Cowan's service in violation of § 1926(b).

Winchester Utilities also argues that Cowan is using § 1926(b) as a sword instead of a shield against incursion [Doc. 40 at pp. 7—8]. This distinction between offensive and defensive uses of § 1926(b) was discussed in *Le-Ax Water Dist.*, 346 F.3d at 707—710. In that case, although the plaintiff rural water district satisfied the three elements of a § 1926(b) claim, the Sixth Circuit concluded that the plaintiff could not invoke the protections of § 1926(b) because it was "seeking to use the statute to foist an incursion of its own on users outside of its boundary that it has never served or made agreements to serve." *Id*. at 707. Thus, the court concluded "§ 1926(b) can be used only as a shield to defend against invasion rather than as a sword to wage one." *Id*.; s*ee Public Water Supply Dist. No. 3 of Laclede Cnty.,Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 519 (8th Cir. 2010) ("Section 1926(b) provides a shield, not a sword"). As Cowan points out, however, the Disputed Customers have been receiving service from Cowan for many years[4] [Doc. 42 at pp. 6—7]. Thus, Cowan is not using § 1926(b) as a sword to grab customers or territory that it has not previously served; Cowan is merely trying to protect the current service area for which it is indebted to the federal government.

---

[4]Based on the parties' joint stipulation of facts, it appears that Cowan began providing domestic sewer service to Shaw Industries, or its predecessor, in 1964, approximately two years *after* the Shaw Industries property was annexed by Winchester [Doc. 26 at ¶¶ 10,12]. The parties further agree that Cowan began providing domestic sewer service to the Diversatech plant in 1972, two years *prior* to its annexation by Winchester [*Id*. at ¶¶ 11, 12]. Based on these facts, the Court does not find it to be a material difference whether the annexation or the provision of services came first because it is undisputed that Cowan has been providing domestic sewer services to the customers without interruption for many years and there is no evidence that WUS attempted to do so until 2014.

Next, Winchester Utilities suggests that the purpose of § 1926(b) is to protect rural water service users, but the Disputed Customers are not "farmers, ranchers, or other rural residents" as described by the statute [Doc. 40 at pp. 6—7]. Further, WUS notes that this case is about the provision of sewer service, not water service, to the Disputed Customers [*Id.*]. These arguments are without merit. There is no requirement that Cowan prove the Disputed Customers are "farmers, ranchers, or other rural residents" in order to assert a § 1926(b) claim. Cowan is a qualifying association under the statute and the Disputed Customers are within the service area which is indebted by an outstanding loan obligation. Additionally, the plain language of the statute applies to indebted associations for "the installation of or improvement of drainage or waste disposal facilities." 7 U.S.C. § 1926(a)(1).

Finally, Winchester Utilities suggests there is no evidence that the Disputed Customers would be "better served" by Cowan rather than WUS and that there is no proof of an agreement allowing Cowan to serve those customers [Doc. 40 at p. 5]. First, § 1926(b) does not require proof that the indebted association provide "better" service than the competing municipality. Second, Winchester Utilities is correct that this record contains no evidence of a written or oral agreement between any of the parties and/or the Disputed Customers as to the provision of domestic sewer service to those customers. Indeed, it is a mystery as to how and why this situation evolved. Nevertheless, there is no requirement that Cowan prove the existence of an agreement to serve the Disputed Customers. The undisputed facts are that Cowan is an indebted association within the meaning of the § 1926(b) and it has been providing service to the customers for many

years.  The lack of a written agreement among the parties does not negate Cowan's right to the protections of § 1926(b) during the term of indebtedness.

Although Winchester Utilities claims that a ruling in favor of Cowan "would amount to re-drawing the city limits of Cowan and Winchester" [Doc. 40 at p. 7], the Court finds the result to be less dramatic.  There are no genuine issues of material fact in dispute and it is clear that Cowan is entitled to the protections of § 1926(b).

2. <u>42 U.S.C. § 1983</u>

Cowan argues that violations of § 1926(b) are enforceable through an action pursuant to 42 U.S.C. § 1983 [Doc. 35 at pp. 11—12], a point that the defendants do not dispute.  The Sixth Circuit and other courts have concluded that § 1983 provides a mechanism for enforcing violations of § 1926(b).  *Wayne v. Village of Sebring*, 36 F.3d 517, 529 (6th Cir. 1994); *Rural Water Dist. No. 1 v. City of Wilson*, 243 F.3d 1263, 1275 (10th Cir. 2001).  Count II of the First Amended Complaint asserts a deprivation of plaintiff's rights under 7 U.S.C. § 1926(b) under color of state law [Doc. 8 at ¶¶ 20—25].  Accordingly, in light of the foregoing analysis the Court finds that plaintiff is entitled to judgment as a matter of law as to its § 1983 claim for violation of rights protected by § 1926(b).

3. <u>Defendants' Trespass Counterclaim</u>

Defendants' have asserted a counterclaim of common law trespass by arguing that Cowan has trespassed into the city limits of Winchester for years to provide service to the Disputed Customers, by having constructed a lift station within the city limits of Winchester, and by using Winchester-owned water meters to determine billing for

Cowan's customers [Docs. 15, 16]. Thus, WUS contends that Cowan is trying to use federal law to justify its trespass and this should not be permitted as a matter of public policy [Doc. 31 at pp. 7—8]. Indeed, defendants contend that "the mere fact that Cowan has intentionally entered into the city limits of Winchester is sufficient to establish a claim of trespass to land" [Doc. 40 at p. 3]. Defendants contend that actual harm is not an element of trespass and that trespass can occur when there is a continued presence of a structure which was tortiously placed there [*Id*.].

Cowan argues that the defendants cannot identify a cognizable property right which they possess that could form the basis of a trespass action [Doc. 35 at pp. 12—13]. Cowan points to the testimony of Beth Rhoton, the City Administrator for Winchester, who stated that the only property interest being violated by Cowan is that they were operating within the Winchester city limits [Doc. 35 at p. 13]. Cowan argues that there is no requirement for Cowan to obtain permission to conduct business within the city limits of Winchester [Doc. 36 at p. 16]. Cowan also asserts that it had pipes in the ground at both properties before they were annexed by Winchester; thus, Cowan was not trespassing [Doc. 42 at p. 10]. Finally, Cowan argues that any trespass claim is barred by the doctrine of laches and is preempted by § 1926 [*Id*. at pp. 10—11].

Cowan relies on the description of trespass from *Scott v. Yarbro*, 2005 WL 1412128, at *3 (Tenn. Ct. App. 2005):

> In actions of trespass possession is the gist of the action, and the gist of the trespass is the injury to possession. Either actual or constructive possession is sufficient to maintain trespass. If the party is in actual possession under a deed, this is sufficient to maintain the action. If he is not in actual

possession, he must show a legal title to the property, and then constructive possession will be presumed from the legal title.

*Id.* (quoting *Pepper v. Gainesboro Tel. Co.*, 1 Tenn. App. 175, 177 (Tenn. Ct. App. 1925)). In response, defendants contend that the issue is not possession, "but whether Cowan should be allowed to use federal bonds as a sword and not a shield to justify its wrongful entry into Winchester city limits" [Doc. 40 at p. 3]. In fact, possession *is* the issue with respect to the trespass claim. There is no evidence that defendants own or possess the property on which the lift station is built or through which the Cowan sewer lines run. Without any possessory interest in the Disputed Customers' property, defendants cannot establish a claim for trespass. Cowan will be granted summary judgment as to defendants' counterclaims and they will be dismissed.


IV. **Conclusion**

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact in dispute and that Cowan is entitled to judgment as a matter of law as to the claims against the Winchester Utility System under 7 U.S.C. § 1926(b) and 42 U.S.C. § 1983. The Court further finds that the City of Winchester is entitled to judgment as a matter of law and the claims against it will be dismissed. Finally, the Court finds that defendants cannot state a claim for trespass and Cowan is entitled to judgment as a matter of law as to the counterclaims. Accordingly, Cowan's motion for summary judgment [Doc. 33] will be **GRANTED**, the City of Winchester's motion for summary judgment

[Doc. 27] will be **GRANTED**, and the Winchester Utility System's motion for summary

judgment [Doc. 30] will be **DENIED**.

An appropriate order will be entered.


    ___s/ Thomas W. Phillips_____
    SENIOR UNITED STATES DISTRICT JUDGE